IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DL, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:23-cv-1122 |
| | § | |
| JS, | § | DEMAND FOR JURY TRIAL |
|     Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW Plaintiff, DL, and files this Original Complaint, and for cause of action would respectfully show as follows:

### I.   PARTIES

1. Plaintiff DL (hereinafter "DL" or "Plaintiff") is a resident of Austin, Travis County, Texas. This case is being filed using pseudonyms because the Plaintiff was a minor during times relevant to this case, and because the case involves sensitive matters of a sexual nature, and a motion for leave to use pseudonyms accompanies this filing.

2. Defendant JS (hereinafter "JS" or "Defendant") is a resident of Park City, Summit County, Utah. Defendant may be served with process by serving him at his residence 7970 Glenwild Dr., Park City, UT, or wherever he may be found. Although DS is an adult, the use of pseudonyms for both parties and their families is proper because of the sensitive nature of this case.

### II.   JURISDICTION

3. The Court has personal jurisdiction over Defendant because the tortious conduct complained of herein was committed in Texas. Specifically, with respect to this suit, the Defendant intentionally published to numerous people in Texas the defamatory statements complained of herein, which also pertain specifically to Plaintiff, who is a Texas resident. As such, Defendant

has purposefully availed himself to Texas law and jurisdiction, such that he cannot be surprised that he is hailed before a Court in Texas, where he maintained his defamatory campaign against Plaintiff.  This Court also has personal jurisdiction over Defendant pursuant to the Texas Long-Arm Statute. TEX. CIV. PRAC. & REM. CODE §§ 17.041-.042.  By virtue of his dealings and other significant contacts in Texas, Defendant should reasonably anticipate that he is subject to the jurisdiction of Texas and her courts.  Defendant has certainly purposefully availed himself of the laws of Texas when he published dozens of defamatory statements and private facts to Texas residents with the intent of destroying Plaintiff's reputation in Texas.

4.      This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332 because the Plaintiff and Defendant are citizens of different states and Plaintiff seeks relief of over $1,000,000.

### III.    VENUE

5.      Venue is proper in the Western District of Texas pursuant to Tex. Civ. Prac. & Rem. Code § 15.017 because Plaintiff resided in Travis County at the time of the accrual of the cause of action. Venue is also proper because Plaintiff properly joined two or more causes of action arising from the same transaction, occurrence or series of transactions or occurrences, and one of the causes of action is governed by the mandatory venue provisions. Tex. Civ. Prac. & Rem. Code § 15.004.

### IV.    FACTS

6.      Plaintiff dated Defendant's daughter ("hereinafter, "ES"), from September 2021 through January 2022 when they were both 17 years old and classmates in Park City High School in Park City, Utah.   During the course of their relationship, Plaintiff and ES had consensual sex on multiple occasions, at times employing protection and at other times having unprotected sex.  The couple's tacit agreement and course of conduct established that unprotected sex was an acceptable

option. In fact, ES had initiated unprotected sex in her car in a parking lot and had performed unprotected oral sex on DL with no issue or complaint on more than one occasion.

7. On the night of December 18, 2021, Plaintiff's family was hosting a Christmas party and ES drove over to their house to attend. Plaintiff was intoxicated and ES was not intoxicated. ES chose to have sex with Plaintiff in Plaintiff's bedroom. During intercourse, Plaintiff was having difficulty maintaining an erection because of his intoxication, so he removed his condom in order to be able to continue to perform. Plaintiff did not believe taking his condom off would be upsetting to ES as long as he did not ejaculate because they were in an exclusive relationship, she was on the pill, neither had any STD's, they had engaged in unprotected oral sex on several occasions, and stopping before ejaculation is what they had done when she had instigated unprotected vaginal sex in her car days earlier.

8. ES now claims that she first realized Plaintiff was not wearing a condom when she felt it on the bed next to her arm. ES expressed to Plaintiff that she was upset by him removing the condom without discussing it with her first, and he apologized. The couple quickly reconciled and continued to date. Plaintiff broke off the relationship a few weeks later. At that time, ES begged Plaintiff not to break up with her, and expressed how deep her feelings were to him, despite their various misunderstandings, and tried to convince him not to break up with her. The two teenagers remained friends after the breakup, and they went to the same parties, including at least one party she hosted at her parents' house. She tried to get Plaintiff to get back together with her, and she certainly did not act like he had sexually assaulted her.

9. After Plaintiff started dating another young woman who ES knew, ES began "bad mouthing" Plaintiff around their high school and telling people that he had sexually assaulted her.

10. ES, her mother, and Defendant filed a civil lawsuit against Plaintiff and his parents in May 2022. ES and her mother then went to the Summit County District Attorney's office and complained that she had been sexually assaulted. The Summit County DA directed ES and her mother to return the next day when they could take a full statement in the presence of staff trained in that type of complaint. The next day, ES and her mother returned and gave a full video statement. At that time, she admitted that she was not intoxicated, that Plaintiff was intoxicated, that she had chosen to have sex with him on the night in question, and that they had previously had unprotected sex. She claimed that because he had taken the condom off on that occasion without her verbal consent, she was a victim of sexual assault.

11. The Summit County District Attorney declined to prosecute Plaintiff because, even if the acts occurred as Defendant's daughter alleges, those acts do not amount to sexual assault under Utah Law, and in fact are not a crime anywhere in the United States. Based upon ES's statements, the District Attorney considered prosecuting ES for sexual assault because Plaintiff was too intoxicated to consent to sex, but ES chose to have sex with him anyway, but ultimately Summit County decided not to charge ES. The District Attorney's office issued a declination letter, a copy of which has been provided to Defendant and ES. As a result, Defendant and ES undoubtedly know that Plaintiff did not sexually assault ES and that Plaintiff has not committed any crime. The civil case has been compromised and dismissed, and the Defendant is clearly unhappy with the outcome in that case.

12. Since the incident, Defendant has been obsessed with Plaintiff's family and specifically obsessed with doing anything he can to hurt Plaintiff. He has told several people that he intends to ruin Plaintiff's life. His plan includes a campaign to defame Plaintiff and attempt to ruin his reputation in Austin, where he attends The University of Texas. He and his family have also

begun a campaign in Utah to change the law so that condom removal without specific verbal consent would be a crime. Defendant and his family have repeatedly told half-truths and failed to disclose important facts about ES and Plaintiff's communications in order to make ES seem like a victim of "stealthing" which they claim is a form of sexual assault. She is not.

13. The fact that Defendant has engaged in an attempt to change legislation in Utah to redefine what happened as a sexual assault is dispositive with respect to the fact that he knows or should know that what happened was not a sexual assault. The Utah legislature refused to reclassify condom removal as a sexual assault, but upon information and belief, Defendant and his daughter continue to try to get the legislature in Utah to change the law to that effect. ES has endeavored to make herself a professional "advocate" for victims of stealthing, so she and her family are motivated to cast her as a victim.

14. Despite the fact that Defendant knows or should know that Plaintiff has not committed a sexual assault or any other crime, Defendant published statements accusing him of sexual assault and suggesting that he had committed a crime. Specifically, Defendant published statements to Bobby Orr, stating in pertinent part that "(DL), sexually assaulted my daughter during their senior year in high school." This defamatory statement is attached as Exhibit A to this complaint with DL's name redacted to protect everyone's privacy. Bobby Orr is on the board of the Phi Gamma Delta Fraternity at the University of Texas at Austin, where Plaintiff is a member. Defendant's statements to Mr. Orr are false, defamatory, and maliciously intended to harm DL's reputation.

15. Upon information and belief, Defendant has also engaged in a letter-writing campaign, sending similarly defamatory statements to members of sororities across Texas in an effort to destroy Plaintiff's reputation and turn private allegations into matters of public knowledge. The president of one sorority in Austin told Plaintiff's brother that she had received a creepy letter

discussing Plaintiff having sex with ES, and was concerned and confused about why someone would be sending her information about two minors having consensual sex in Utah in 2021. She did not understand what any of it had to do with her or her sorority, and was disturbed that someone was sending her such salacious materials.

16. Upon information and belief, Defendant, who is a man in his mid-50's, has also now used the internet and social media to discover the names and addresses of sorority girls who Plaintiff may know or may come into contact with. He has sent these girls copies of the unverified civil complaint from the now dismissed civil suit which has been deemed private by the Utah court. He has sent these materials with no return address and no cover letter explaining who the letter was from or why they are receiving it. The fact that Defendant is sending anonymous letters about his own daughter's sex life with her boyfriend to girls in their late teens and early twenties is just plain creepy, and the fact that the envelopes do not identify the sender and have no return address clearly indicates that he knows what he is doing is wrong. These envelopes contain markings that they were sent from Utah, and not from Texas.

17. In this way, Defendant has also publicized matters concerning Plaintiff's private life that are not a matter of legitimate public concern. The publication of these matters is highly offensive to Plaintiff and would be highly offensive to a reasonable person of ordinary sensibilities. Specifically, Defendant has sent copies of an unverified complaint that he filed against Plaintiff and Plaintiff's parents in Utah to dozens of recipients without any context whatsoever. The allegations made in the Utah lawsuit are highly intimate and embarrassing with regard to Plaintiff's private affairs. Not surprisingly, the civil complaint includes cherry-picked text messages, omits many facts that would provide context for the event complained of, and otherwise creates a false impression that Plaintiff's conduct was reprehensible, when it was not. For example, while both

ES and Plaintiff were 17 years old at the time of the incident, and are only two months apart in age, Defendant waited until Plaintiff turned 18, but while ES was still a minor, to file the complaint, and in the complaint he alleged that Plaintiff, an adult, had sex with ES, a minor, giving the false impression that Plaintiff was an adult and ES was a minor at the time of the incident.

18.     Following a motion by Plaintiff's civil defense lawyers in Utah, the court in Utah determined that the lawsuit filed there by Defendant should be classified as private and ordered that DL and his parents be renamed with pseudonyms. Specifically, the Utah Court also ordered that the matter be "CLASSIFIED AS PRIVATE as provided in UT R J ADMIN RULE 4-202.04(5)(A) so that the public may not have access to the pleadings or filings contained therein as provided in UT R J ADMIN Rule 4-202.03(3)." (Emphasis in original). A redacted copy of the Utah Court's order is attached as Exhibit B.  As a result of the Utah Court's order, the complaint filed by Defendant in Utah and the Utah case itself are private per se.

19.     Defendant has sent unredacted copies of the complaint from the private case to a broad class of recipients with no context in order to publicize the private matters of the case to Plaintiff's community. Defendant has sent the materials with malice and intent to destroy Plaintiff's reputation to an extremely broad class of recipients in an attempt to turn the allegations of the private case into matters of public knowledge.

V.     **CAUSES OF ACTION**

**A.     Libel**

20.     The preceding paragraphs are incorporated by reference.

21.     Plaintiff is a private individual and is neither a public official nor a public figure for any purpose.

22.     Defendant is a non-media defendant.

23. The defamatory statement made and published by Defendant was a statement of fact that was false, both in the particular details and in the main point, essence or gist in the context in which it was made.

24. The defamatory statement made and published by Defendant directly refers to Plaintiff.

25. The defamatory statement made and published by Defendant was libelous per se because it falsely accused Plaintiff of a crime and of sexual misconduct.

26. The defamatory statement made and published by Defendant was libelous per se because it impeached Plaintiff's honesty, integrity, virtue and/or reputation.

27. The defamatory statement made and published by Defendant was libelous per se because it injured Plaintiff's reputation and exposed Plaintiff to public hatred, contempt, or ridicule, and/or financial injury.

28. In the alternative, the foregoing statements made and published by Defendant was libelous through innuendo and/or implication.

29. Defendant is strictly liable for the damages caused by the libel.

30. Alternatively, Defendant knew the foregoing defamatory statements were false or he was reckless with regard to whether the statements of fact were false.

31. Alternatively, Defendant knew or should have known that the defamatory statements were false.

32. Defendant's libel has proximately caused Plaintiff to experience severe mental anguish and harm to his reputation, in addition to loss of earning capacity.

33. Plaintiff is entitled to recover nominal damages, general damages, special damages and/or exemplary damages.

B.   **Public Disclosure of Private Facts**

34.   The preceding paragraphs are hereby incorporated by reference.

35.   Defendant gave publicity to matters concerning Plaintiff's personal life by sending the complaint from the private Utah case to such a broad class of recipients as to reach the public at large, and turn those private allegations into matters of public knowledge.

36.   The publication of the Utah complaint is highly offensive, especially in light of the Utah Court's order to classify the case as private and rename Plaintiff and his parents with pseudonyms. The publication of the complaint would be highly offensive to a reasonable person of ordinary sensibilities, and has caused Plaintiff extreme mental anguish as a result.

37.   The matters publicized in the complaint from the private Utah case are not of legitimate public concern. The Utah Court determined that the matters were private, and classified the case as private "so that the public may not have access to the pleadings or filings contained therein as provided in UT R J ADMIN Rule 4-202.03(3)." (emphasis removed). Defendant's publication of these private matters directly contravenes the Utah Court's order.

38.   Plaintiff has suffered significant injury as a result of the Defendant's disclosure, including severe mental anguish and reputational damage.

C.   **Intentional Infliction of Emotional Distress**

39.   The preceding paragraphs are hereby incorporated by reference.

40.   Defendant intentionally inflicted emotional distress upon Plaintiff by (1) acting intentionally and/or recklessly, (2) in an extreme and outrageous manner, (3) that caused injury and harm to Plaintiff, (4) in the form of severe emotional distress.

41.   Plaintiff seeks actual and punitive damages for the harm caused by the deceitful and defamatory conduct identified herein.

## VI. SATISFACTION OF CONDITIONS PRECEDENT

42. The preceding paragraphs are hereby incorporated by reference.

43. Pursuant to the Texas Civil Practices and Remedies Code, Plaintiff requested that Defendant correct, clarify, or retract the statement detailed above and any similar statements published by Defendant. The statement was defamatory by (1) accusing Plaintiff of the commission of a crime and sexual misconduct; (2) injuring Plaintiff's reputation and exposing Plaintiff to public hatred, contempt, or ridicule, and/or financial injury; and (3) by impeaching Plaintiff's honesty, integrity, virtue, and/or reputation.

## VII. DAMAGES

44. Plaintiff is entitled to nominal damages, general damages, and/or actual damages for Defendant's libel, including compensation for injury to his reputation and mental anguish. Defendant's libel proximately caused Plaintiff severe mental anguish, reputational damage, and special damages including loss of earning capacity.

45. Plaintiff is entitled to actual damages as a result of Defendant's public disclosure of private facts, including damages for mental anguish and loss of earning capacity. Further, Plaintiff is entitled to nominal damages.

46. Plaintiff is entitled to exemplary damages pursuant to Chapter 41 of the Texas Civil Practices and Remedies Code because Defendant acted with malice.

47. Plaintiff seeks equitable relief in the form of a temporary restraining order preventing Defendant from further dissemination of defamatory statements and disclosure of private facts.

48. Plaintiff is also entitled to pre- and post-judgment interest and costs of court.

## VIII. PRAYER

**WHEREFORE**, Plaintiff demands judgment on each of the causes of action alleged for the following relief:

1) Judgment in favor of Plaintiff and against all Defendant for damages in such amounts as may be proven at trial;

2) Compensation for both economic and non-economic losses, including but not limited to:

   a) past and future mental anguish;

   b) permanent psychological damage;

   c) loss of earning capacity;

   d) injury to his name; and

   e) injury to his character and reputation, embarrassment and humiliation;

3) Punitive and/or exemplary damages in such amounts as may be proven at trial;

4) Court costs;

5) Pre- and post-judgment interest; and

6) Such other and further release to which Plaintiff may be entitled, whether in law or equity.

## IX. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues.

Dated: September 19, 2023

Respectfully submitted,

/s/ Derek Merman
Derek Merman *Pro Hac Vice pending*
Attorney in Charge
Texas Bar No. 24040110
Federal Bar No. 578113
**HEARD MERMAN LAW FIRM**
4900 Fournace Place, Suite 240

Bellaire, Texas 77401
713.665.1100 Voice
713.481.7082 Facsimile
HLFpi@HeardMerman.com

/s/ Dick DeGuerin
Dick DeGuerin
**DeGuerin & Dickson**
Texas Bar No. 05638000
Federal Bar No. 6204
1018 Preston, 7th Floor
Houston, Texas 77002
713.223.5959 Voice
713.223.9231 Facsimile
dick@deguerin.com

**ATTORNEYS FOR PLAINTIFF**