## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| DL, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:23-cv-1122 |
| | § | |
| JS, | § | **DEMAND FOR JURY TRIAL** |
|     Defendant. | § | |

### PLAINTIFF'S RESPONSE TO DEFENDANT JS'S
### <u>MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)</u>

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff has clearly stated claims upon which relief may be granted. However, counsel would welcome an opportunity for oral argument if the Court believes it would be helpful.

# I.   STATEMENT OF FACTS

## A.   Nature of the Case

This is a defamation, public disclosure of private facts and intentional infliction of emotional distress case brought by DL against JS for a series of false and malicious statements published by JS to members of DL's community in a blatant attempt to assassinate his character. *See* Complaint, Dkt. No. 1, generally. Defendant published statements to Bobby Orr, stating in pertinent part that **"(DL), sexually assaulted my daughter during their senior year in high school**." *Id.* at ¶14, and Exhibit A to Complaint, Dkt. No. 1-1 (emphasis added). Bobby Orr was on the board of the Phi Gamma Delta Fraternity at the University of Texas at Austin, where Plaintiff is a member. *Id.* Defendant's statements to Mr. Orr are false, defamatory, and maliciously intended to harm DL's reputation. *Id.* Defendant has also engaged in an anonymous letter-writing campaign, sending similarly defamatory statements to members of sororities across Texas in an effort to destroy Plaintiff's reputation and turn private allegations into matters of public knowledge. *Id.* at ¶15.

Plaintiff dated Defendant's daughter ("hereinafter, "ES"), from September 2021 through January 2022 when they were both 17 years old and classmates in Park City High School in Park City, Utah. *Id.* at ¶6. During the course of their relationship, Plaintiff and ES had consensual sex on multiple occasions, at times employing protection and at other times having unprotected sex. *Id.* The couple's tacit agreement and course of conduct established that unprotected sex was an acceptable option. *Id.* In fact, ES had initiated unprotected sex in her car in a parking lot in early December, 2021 and had performed unprotected oral sex on DL with no issue or complaint on more than one occasion. *Id.*

1

On the night of December 18, 2021, Plaintiff's family was hosting a Christmas party to which ES and Defendant were invited, and ES drove over to their house to attend. *Id.* at ¶7. Plaintiff was intoxicated and ES was not intoxicated. *Id.* ES chose to have sex with Plaintiff in Plaintiff's bedroom. *Id.* During intercourse, Plaintiff was having difficulty maintaining an erection because of his intoxication, so he removed his condom in order to be able to continue to perform. *Id.* Plaintiff did not believe taking his condom off would be upsetting to ES as long as he did not ejaculate because they were in an exclusive relationship, she was on birth control, neither had any STD's, they had engaged in unprotected oral sex on several occasions, and stopping before ejaculation is what they had done when she had instigated unprotected vaginal sex in her car days earlier. *Id.* Weeks after the Christmas party, Plaintiff broke up with ES, and several weeks later still, Plaintiff started dating someone else who knew ES. *Id.* at ¶¶8-9. ES *then* began to claim that she was sexually assaulted by Plaintiff, even though she had established that unprotected sex was an acceptable option and had instigated the sexual intercourse on the night in question. *Id.*

ES, her mother, and Defendant filed a civil lawsuit against Plaintiff and his parents in May 2022. *Id.* at ¶10.  Then in June 2022, ES and her mother went to the Summit County District Attorney's office and complained that she had been sexually assaulted. *Id.* The Summit County District Attorney interviewed ES and, based on her description of the event, declined to prosecute Plaintiff because even if the acts occurred as Defendant's daughter alleges, those acts do not amount to sexual assault under Utah Law or anywhere in the United States. *Id.* at ¶11.

The parties settled the Utah civil case and a related federal declaratory judgement action in March 2023.  Following motions by Plaintiff's civil defense lawyers in Utah, both courts in Utah determined that the lawsuit filed there by Defendant should be classified as private and ordered that DL and his parents be renamed with pseudonyms. *Id.* at ¶18.  Specifically, the Utah Court also

ordered that the matter be "CLASSIFIED AS PRIVATE as provided in UT R J ADMIN RULE 4-202.04(5)(A) so that the public may not have access to the pleadings or filings contained therein as provided in UT R J ADMIN Rule 4-202.03(3)." *Id.* As a result of the Utah Court's order, the complaint filed by Defendant in Utah and the Utah case itself are private as a matter of law. *Id.* The Federal court went further, sealing the case completely.[1]

Upon information and belief, Defendant has also now used the internet and social media to discover the names and addresses of sorority girls who Plaintiff may know or may meet and has sent these women copies of the unverified complaint that he filed in Utah State Court against Plaintiff and his parents. *Id.* at ¶16. Defendant has sent unredacted copies of the complaint from the private case to a broad class of recipients with no context in order to publicize the private matters of the case to Plaintiff's community. *Id.* at ¶19. Defendant has sent the materials with malice and intent to destroy Plaintiff's reputation to a broad class of recipients in an attempt to turn the allegations of the private case into matters of public knowledge. *Id.* at ¶19.

**B.    Stage of Proceeding**

Plaintiff sued Defendant for damages related to defamation, public disclosure of private facts and intentional infliction of emotional distress. *See* Complaint, Dkt. No. 1, generally. Defendant filed his Motion to Dismiss pursuant to Rule 12(b)(6) on November 2, 2022.

## II.    SUMMARY OF THE ARGUMENT

Plaintiff has adequately pled his causes of action for defamation, public disclosure of private facts, and intentional infliction of emotional distress. Defendant's arguments are ostensibly supported by a skewed and biased interpretation of the facts of this case that a Jury would be

---

[1]    Plaintiff asks that this Court take judicial notice of the Utah District Court's Memorandum Decision and Order in Case No. 2:22-cv-00550-JNP-JCB, wherein the Utah District Court found that Plaintiff and his parents had "carried their heavy burden because they have articulated real and substantial interests that outweigh the presumption of public access to this case."

unlikely to accept.  Interpretation is the province of the Jury and all inferences belong to the non-movant, who has amply plead the elements of his cause of action and supported those allegations with facts; dismissal would be improper.

Defendant attempts to recharacterize his outrageous course of conduct as either a campaign to warn members of Plaintiff's community of the dangers posed by a rapist, or mere "legal opinions" about a civil tort of sexual assault. Defendant casts himself as a member of a public debate by virtue of his unsolicited mailings to private individuals to whom he made false accusations against Plaintiff. The communication that Defendant sent to Bobby Orr is explicit, textual defamation, because the plain meaning of the defamatory remarks is clear from the communication itself. Defendant stated "(DL), sexually assaulted my daughter during their senior year in high school" – the statement clearly alleges that Plaintiff engaged in sexual misconduct and a crime, implies that DL raped ES, provides no context for alternative interpretation and amounts to defamation per se.

Defendant attempts to excuse his dissemination of the Utah complaint because the act of *his* filing the malicious civil complaint placed those facts in the public record until the time Plaintiff was able to reclassify the case as private. Defendant attempts to use judicial privilege as both a sword and shield to publish false accusations of sexual assault against Plaintiff.

Finally, Defendant complains that Plaintiff's cause of action for intentional infliction of emotional distress should be dismissed because it already neatly falls into the categories of defamation and public disclosure of private facts. This argument fails because the damage intended by Defendant went beyond merely reputational; Defendant was also trying to cause DL personal emotional damage.  Moreover, Plaintiff is entitled to plead alternative theories and has adequately alleged and supported each element of his claims.

### III.   STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000) (citing *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards,* 677 F.2d 1045, 1050 (5th Cir. 1982)). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L. Ed. 2d 80 (1957).

To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. at 556.).

In examining a Rule 12(b)(6) motion to dismiss, the Court must construe the Plaintiff's complaint "in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Securities Inc.,* 94 F.3d 189, 194 (5th Cir. 1996).

### IV.   ARGUMENT AND AUTHORITY

Defamation, public disclosure of private facts, and intentional infliction of emotional distress are well-established causes of action in Texas and Plaintiff adequately alleged all of these in his Complaint. To the extent that Plaintiff's allegations or the basis therefore are unclear in any regard, Plaintiff respectfully requests the opportunity to replead with greater specificity.

**A.      Plaintiff Adequately Alleged Defamation.**

To adequately allege defamation, Plaintiff must plead: 1) Defendant JS published statements of fact to a third party; 2) that were defamatory concerning Plaintiff; 3) with the requisite degree of fault; and 4) that proximately caused Plaintiff damages. *Anderson v. Durant*, 550 S.W.3d 605, 617-618 (Tex. 2018). The law presumes damages where Defendant's statements were defamatory *per se*. *Id.* Because Plaintiff alleges all required elements of this cause of action and provides the factual basis for the allegations, Defendant's Motion should be denied.

1.      <u>Plaintiff alleged that Defendant published statements of fact to a third party.</u>

Plaintiff has alleged that Defendant JS published statements of fact to third party Bobby Orr. *See* Complaint, Dkt. No. 1, at ¶14; *See also* Exhibit A to Complaint, Dkt. No. 1-1. Those statements read in pertinent part that "I am writing to make this advisory board and the members of the Tau Deuteron chapter aware that [Plaintiff] sexually assaulted my daughter during their senior year of high school," and "…at the end of the day, I wanted the board to be aware that a member of FIJI and of your local chapter was involved in sexual assault. I would be more than happy to forward all legal and filing documents necessary" Exhibit A to Complaint, Dkt. No. 1-1. Under Texas law, a statement is published when it is communicated orally, in writing, or in print to a third party capable of understanding its defamatory meaning and in a manner that the third party understands. *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 579 (Tex. 2017). Here, the statements were published by Defendant to Bobby Orr, and Mr. Orr clearly understood those statements to mean what they said.

The statements published by Defendant to Mr. Orr are assertions of fact. In *Bentley v. Bunton*, the Texas Supreme Court adopted the test used by the United States Supreme Court in *Milkovich v. Lorain J. Co.* for determining whether a statement is actionable in defamation. *Bentley*

*v. Bunton*, 94 S.W.3d 561, 580 (Tex. 2002). In *Milkovich*, the Supreme Court rejected the notion that the First Amendment requires a separate "opinion" privilege limiting the application of state defamation laws. *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 1 (1990).  Instead, as the Texas Supreme Court explained, the test handed down by the US Supreme Court in *Milkovich* "focuses the analysis on a statement's verifiability and the entire context in which it was made." *Id.*  Texas Courts look to determine whether statements in the context they are made are constitutionally protected opinions about the government's enactment and interpretation of its laws, or instead are false statements of fact. *Lilith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355, 363 (Tex. 2023). The Court answers this question from the perspective of a reasonable person's perception of the entirety of the communication, not from isolated statements. *Id.*

Defendant likens his statements to those made in *Lilith* as statements of opinion as part of a rigorous debate on the enactment of the government's laws. *See* Defendant's Motion, Dkt. No. 14 at 5-7. In *Lilith*, Plaintiffs The Lillith Fund for Reproductive Equity and The Afiya Center brought suits against Mark Lee Dickson and Right to Life East Texas for statements Dickson made on his own Facebook page and on the Facebook page for Right to Life East Texas shortly after the passage of a local ordinance related to abortion. *Lilith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355, 359 (Tex. 2023). In his posts, Dickson identifies the plaintiffs in that case as "criminal organizations" and writes that the plaintiffs "exist to help pregnant Mothers murder their babies" and "murder innocent unborn children. *Id.* The Texas Supreme Court, in determining that the statements were protected as opinion, noted "that a reasonable reader is acquainted with the history of society's debate about abortion," "that a reasonable reader could not be ignorant of the ongoing, highly publicized, and fervent debate over many decades regarding the morality and legality of abortion," and "[a] reasonable person is further aware that the primary argument espoused against

legalized abortion is that abortion is an unjust killing of human life—that it is, in essence, murder.

Equally apparent is that such statements reflect an opinion about morality, society, and the law."

*Id.* at 365-366. The Court goes on to note:

> As the statements themselves make clear, Dickson was engaged in a campaign to pass ordinances similar to the Waskom Ordinance in other towns. He used his Facebook page and that of Right to Life East Texas to inform, persuade, and encourage his supporters. His activities attracted counter-lobbying efforts from groups that support legalized abortion. The challenged statements were a part of this campaign. Some recite the Waskom Ordinance or reference its effect. Several posts include links to petitions and advocacy hashtags. Other posts engage with the plaintiffs' and others' responsive speech favoring legalized abortion. As the responding comments show, the collective impression is not that Dickson was disseminating facts about particular conduct, but rather advocacy and opinion responding to that conduct. Dickson invited the reasonable reader to take political action.

*Id.* at 366-367.

Unlike the defendant in Lilith, Defendant was certainly disseminating facts about particular conduct to Mr. Orr. Mr. Orr was not participating in a political debate about when a man should reasonably know he is or is not to use a condom, nor did Defendant provide any context in his email that there was a debate at all. Defendant likens his own statements to those of Dickson by ignoring the analysis that Texas Law requires: an analysis of the context in which the statements were made. The statements published to Bobby Orr were not made in a public debate on Facebook over public matters; Defendant's targets had no choice or frame of reference regarding their participation in Defendant's campaign. Defendant's goal, as is apparent in the entire context of the statement, was not to change Mr. Orr's mind about the state of sexual assault laws in Texas or Utah, but was instead to paint Plaintiff as a rapist and criminal, or to at least create the impression that he might be, by mischaracterizing actual conduct that had taken place in the past. Defendant's statements are defamatory assertions of fact, and Plaintiff has pled them as such.

Defendant's statements to Bobby Orr are objectively falsifiable, and Plaintiff has also adequately pled that they are false. *See* Complaint, Dkt. No. 1, at ¶14, 23, 25. Defendant's daughter attempted to file charges for sexual assault against Plaintiff and was informed by the Summit County District Attorney's office that the facts did not amount to sexual assault. Therefore, the assertions of fact are false and Defendant knew that at the time he published the false statements.

2.   <u>Defendant JS published statements were defamatory concerning Plaintiff.</u>

Texas law defines defamatory statements as statements of fact about a person that tend to diminish the plaintiff's reputation. *Innovative Block of S. Texas, Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 419 (Tex. 2020). To prove an action for defamation, the plaintiff must prove that the statement was reasonably capable of a defamatory meaning. *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 625 (Tex. 2018)(*citing Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653, 654 (Tex. 1987)). To determine whether a statement is reasonably capable of a defamatory meaning, the Court must consider 1) the type of defamation alleged, and 2) whether the statement was ambiguous. *Id*. at 631-632. There are generally two types of defamation: textual defamation and extrinsic defamation. *Id.* at 626. Textual defamation occurs when a statement's defamatory meaning arises from the statement's words without reference to any extrinsic evidence, meaning the Plaintiff can prove the defamatory meaning with the statement itself and no other evidence. *Id.*  Extrinsic defamation occurs when a statement whose textual meaning is innocent becomes defamatory when considered in light of "other facts and circumstances sufficiently expressed before" or otherwise known to the reader. *Id.*

There are two types of textual defamation: explicit defamation and defamation by implication. *Id.* at 627. Explicit defamation occurs when the "statement's literal text and its communicative content align—what the statement *says* and what the statement *communicates* are

the same." *Id.* In other words, when the defamatory meaning of a statement arises from the face of the statement itself.

Defendant published statements that accuse Plaintiff of a crime and of sexual misconduct. *See* Exhibit A to Complaint, Dkt. No. 1-1. These are false allegations that are reasonably capable of a defamatory meaning on their face. The Texas Supreme Court has explicitly held that defamation *per se* includes "accusing someone of a crime… or of engaging in serious sexual misconduct."[2] *Id.* at 639(*citing In re Lipsky,* 460 S.W.3d 579, 596 (Tex. 2015)). Here, Defendant has accused Plaintiff of sexual assault, and therefore the statements are explicitly defamatory.

Defendant argues that the statements accusing Plaintiff of sexual assault actually refer to the civil tort of sexual assault. *See* Defendant's Motion, Dkt. No. 14 at 6, 8. Defendant's position is unsupportable in light of long-held Texas caselaw. To be actionable defamation *per se*, the statement does not have to charge a violation of a criminal statute in express terms[3], although the Defendant did so here. *Buck v. Savage*, 323 S.W.2d 363, 369 (Tex. App. – Houston 1959 writ ref'd n.r.e.). If an ordinary person would reasonably conclude that the plaintiff committed a violation of some criminal law from hearing the statement, it is defamatory *per se. Gray v. HEB Food Store No. 4*, 941 S.W.2d 327, 329 (Tex. App.—Corpus Christi 1997, writ denied). A reasonable reader would conclude that Plaintiff committed a crime based on Defendant's statements that "Plaintiff

---

[2]    The Texas Supreme Court in *Dallas Morning News, Inc. v. Tatum* introduced new terms for determining whether a statement is reasonably capable of defamatory meaning, but ratified the continued usage of "defamation per se" as used in relation to special damages. *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 626 (Tex. 2018). The category remains illustrative with regard to the traditional view that these types of defamation are "obviously harmful."

[3]    The Court in *Buck v. Savage*, in finding that the defendant had committed defamation per se, quoted approvingly from 27 Tex. Jur., p. 596, Libel and Slander, Sec. 6: "To be actionable, it is not necessary that the publication charge a crime in express words; it is sufficient if the charge is made by reasonable implication or insinuation, or if it consists of a statement of facts which naturally and presumably would be understood as a charge of crime by those who hear or read it, or if the language was calculated to induce those who heard or read it to understand that the person to whom it relates is guilty of a crime."

sexually assaulted my daughter during their senior year of high school." *See* Complaint, Dkt. No. 1 at ¶14; Exhibit A to Complaint, Dkt. No. 1-1. Defendant did not say "DS is arguably guilty of committing the civil tort of sexual assault, depending on how DS reasonably interpreted my daughter's prior initiation of consensual unprotected sex with him days before." Instead, Defendant accused Plaintiff of sexual assault with no other context because he clearly intended the implication that was conveyed – he wanted Mr. Orr to believe Plaintiff raped his daughter.

In addition to adequately pleading defamation *per se*, Plaintiff also pleads in the alternative that the "statements made and published by Defendant were libelous through innuendo and/or implication." *See* Complaint, Dkt. No. 1, at ¶28. When a publication's text implicitly communicates a defamatory statement, Texas Courts refer to the plaintiff's theory as "defamation by implication." *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 627 (Tex. 2018). A plaintiff can bring a claim for defamation when discrete facts, literally or substantially true, are published in such a way that they create a substantially false and defamatory impression by omitting material facts or juxtaposing facts in a misleading way." *Id.* (*citing Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 115 (Tex. 2000)). Texas Courts have long held that a defendant may be liable for a "publication that gets the details right but fails to put them in the proper context and thereby gets the story's 'gist' wrong." *Id.*  In the present case, Plaintiff has pled and intends to show that Defendant's statements were textually and explicitly defamatory (and amount to defamation *per se*), but even if the Court were to credit Defendant's argument that the statements themselves were true or reflected opinion, it is clear that those statements created a false and defamatory impression by omitting material facts in a misleading way.

Texas law holds that a defamatory statement "must refer to some ascertained or ascertainable person, and that person must be the plaintiff." *Newspapers, Inc. v. Matthews*, 161

Tex. 284, 289, 339 S.W.2d 890, 893 (1960). Here, where Plaintiff is explicitly named in the defamatory statement, Plaintiff has adequately pled that the defamatory statements concern Plaintiff.

     3.    <u>Defendant JS published the defamatory statements with the requisite degree of fault.</u>

In order to adequately allege a claim for defamation, the Plaintiff must allege that the Defendant published the defamatory statements with the requisite degree of fault. A private individual need only prove negligence, whereas a public figure or official must prove actual malice. *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015)(*citing WFAA–TV, Inc. v. McLemore,* 978 S.W.2d 568, 571 (Tex. 1998)). Plaintiff, as a private citizen, was required only to plead that Defendant was negligent with regard to the truth, but has pled in the alternative that Defendant published the statements with actual malice. *See* Complaint, Dkt. No. 1 at ¶ ¶21, 30-31. The Summit County District Attorney's office had informed Defendant and his family that the conduct Defendant's daughter complained of did not amount to sexual assault, and therefore Defendant knew the statement was false when he published it. *See* Complaint, Dkt. No. 1 at ¶ ¶10-11.  In any case, Plaintiff has adequately pled that Defendant published the defamatory statements with the requisite degree of fault.

     4.    <u>Plaintiff has pled defamation *per se*, and therefore the law will presume damages.</u>

As the Texas Supreme Court has explained, "[H]istorically in Texas, defamation *per se* claims allow the jury to presume the existence of general damages without proof of actual injury." *Hancock v. Variyam*, 400 S.W.3d 59, 65 (Tex. 2013)(*citing Bentley v. Bunton,* 94 S.W.3d 561, 604 (Tex. 2002)). In light of the United States Supreme Court's decision in *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, the Texas Supreme Court clarified the state of the law, holding "the Constitution only allows juries to presume the existence of general damages in defamation *per se*

cases where: (1) the speech is not public, or (2) the plaintiff proves actual malice." *Id.* In the present case, Plaintiff has pled sufficient facts to show that the Defendant's speech was not public, and therefore has adequately pled a claim for relief. *See* Complaint, Dkt. No. 1 at ¶¶ 6-11.

In the alternative, Plaintiff has pled and will show that Defendant's defamatory statements have proximately caused the Plaintiff's damages, specifically mental anguish, harm to his reputation, and loss of earning capacity. *Id.* at ¶32. Plaintiff has also pled that Defendant's statements were published negligently or with actual malice, and therefore Plaintiff has adequately pled a claim for relief. *Id.* at ¶30-31. Moreover, Plaintiff has alleged facts to support the existence of both malice and negligence, thereby defeating Defendant's attempt to have this case dismissed.

**B.   Plaintiff Adequately Alleged Public Disclosure of Private Facts**

To adequately allege a cause of action for public disclosure of private facts, Plaintiff must plead the following: 1) Defendant publicized information about the plaintiff's private life; 2) the publicity would be highly offensive to a reasonable person; and 3) the matter publicized is not of a legitimate public concern. *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 474 (Tex. 1995). Because Plaintiff both alleges all required elements of this cause of action and also provides the factual basis for the allegations, Defendant's arguments fail.

1.   <u>Plaintiff alleged that Defendant JS publicized information about the Plaintiff's private life.</u>

Generally, there is a presumption under Texas law that the public has no legitimate interest in embarrassing facts about private citizens. *Id.* (*citing Indus. Found. of the S. v. Texas Indus. Acc. Bd.*, 540 S.W.2d 668, 683 (Tex. 1976)). The determination whether a given matter is one of legitimate public concern must be made in the factual context of each particular case, considering the nature of the information and the public's legitimate interest in its disclosure. *Id.* (*citing Indus. Found. of the S. v. Texas Indus. Acc. Bd.*, 540 S.W.2d 668, 683 (Tex. 1976)). Plaintiff alleges in

his Complaint that Defendant gave publicity to matters concerning Plaintiff's personal life by sending the deemed-private complaint from the Utah case to a broad class of recipients, with whom Defendant had no relationship and that the publication of the Utah complaint is highly offensive and would be highly offensive to a reasonable person of ordinary sensibilities. *See* Complaint, Dkt. No. 1 at ¶35-36. Plaintiff has therefore properly alleged the first element of a cause of action for public disclosure of private facts.

Defendant argues that Plaintiff has failed to allege Defendant disseminated the Utah complaint to a sufficient number of recipients to amount to "publicity" under Texas Law. *See* Defendant's Motion, Dkt. No. 14 at 10-11. The only case to which Defendant cites to support this argument, *Indus. Found. of the S. v. Texas Indus. Acc. Bd*., considered the argument related to publicity at the summary judgment stage of the proceedings, not on a motion to dismiss. *Indus. Found. of the S. v. Texas Indus. Acc. Bd.,* 540 S.W.2d 668, 672 (Tex. 1976). Defendant's argument is therefore misplaced and premature, as the issue of publicity is a fact issue. Once Plaintiff has had the opportunity to conduct electronic discovery, Plaintiff will be able to show that Defendant has publicized private facts to a broad enough class of individuals to amount to "publicity" under Texas law. Plaintiff has pled that Defendant has publicized the private facts to "dozens of recipients," and "to such a broad class of recipients as to reach the public at large." *See* Complaint, Dkt. No. 1 at ¶17, 35. Therefore, Plaintiff has adequately pled that Defendant publicized the information complained of.

Defendant's claim that the Utah complaint cannot be the basis of any claim because of the judicial-proceedings privilege is nonsensical. *See* Defendant's Motion, Dkt. No. 14 at 10. It is true that Defendant filed a lawsuit against Plaintiff in Utah accusing him of sexual assault, and that the accusations made therein were privileged. However, republicizing those accusations without

context, especially in a case that has been deemed private by the Utah Court, is defamatory and in direct conflict with the given purpose of the judicial-proceedings privilege. The privilege is intended to be a shield to protect litigants in a legal proceeding who need to be free from defamation concerns when vigorously defending themselves. Here, Defendant attempts to turn the shield into a sword, and a means to widely disseminate the highly offensive accusation against Plaintiff, which amounts to a private fact about Plaintiff's private life. The legitimate check on converting the litigation privilege into a sword of reputational destruction are the torts of defamation and of public disclosure of private facts.

Defendant relies on *Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, (Tex. 2021) for the proposition that statements in judicial pleadings cannot be the basis of public disclosure of private facts.[4] The present case is distinguishable because the pleading was republished and the Utah Court explicitly determined that the Utah case *should not* be a matter of public record when it classified the pleadings as private. If the world was as the Defendant argues, any person at any time could file a lawsuit against another person, making outrageous and false claims of heinous acts – and then with impunity send copies of that complaint to as many people as he could find addresses for on the internet.  Defendant, in fact, did exactly that.  And he did it with a complaint that was deemed private, the sealing of which he did not oppose.

---

[4]   The Texas Supreme Court in *Landry's, Inc. v. Animal Legal Def. Fund* cited a case from nearly a century prior, stating "The privilege accorded a litigant which exempts him from liability for damages caused by false charges made in his pleadings, or in the court in the course of a judicial proceeding, cannot be enlarged into a license to go about in the community and make false and slanderous charges against his court adversary and escape liability for damages caused by such charges on the ground that he had made similar charges in his court pleadings. *Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 48 (Tex. 2021)(*citing De Mankowski v. Ship Channel Dev. Co.,* 300 S.W. 118, 122 (Tex. Civ. App. 1927)). Here, Defendant attempts to violate the privilege in a manner anticipated by Texas courts nearly 100 years ago.

2.      Plaintiff alleged that publicity of the information would be highly offensive to a
        reasonable person.

Plaintiff alleges in his complaint that Defendant publicized highly offensive, false
information about his private life by sending the Utah Complaint to a broad class of recipients. *See*
Complaint, Dkt. No. 1 at ¶35-36. Texas law is clear that information that is "highly intimate or
embarrassing" includes information concerning sexual assault. *King v. Paxton*, 576 S.W.3d 881,
901 (Tex. App. 2019). Defendant does not argue in his motion that Plaintiff failed to adequately
plead this element of the cause of action for public disclosure of private facts.

3.      The matter publicized is not of legitimate public concern.

Plaintiff alleges in his complaint that the matters publicized in the complaint from the
private Utah case are not of legitimate public concern. *See* Complaint, Dkt. No. 1 at ¶37. Generally,
there is a presumption under Texas law that the public has no legitimate interest in private
embarrassing facts about private citizens. *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 474 (Tex.
1995)(*citing Indus. Found. of the S. v. Texas Indus. Acc. Bd*., 540 S.W.2d 668, 683 (Tex. 1976)).
Whether information is of legitimate public concern depends on the facts of each case, considering
both the nature of the information and the public's interest in its disclosure. *Id.* (*citing Indus.
Found. of the S. v. Texas Indus. Acc. Bd*., 540 S.W.2d 668, 683 (Tex. 1976)). Therefore,
Defendant's argument is misplaced and premature, as the issue of public concern is a fact issue.

Unlike the publication of arrests and convictions, which are matters of public concern,
Plaintiff was never arrested for or convicted of any crime.  And both the state and Federal courts
in Utah, in sealing the pleadings, determined that the issues maliciously raised by Defendant were
not of public concern.  And Defendant tacitly agreed when he chose not to oppose sealing the
pleadings in both cases.  Defendant cannot in one turn consent to making the pleadings private and

then before this Court credibly argue that they are a matter of public concern. Plaintiff has adequately pled that the matter publicized is not of legitimate public concern.

## C.      Plaintiff Adequately Alleged Intentional Infliction of Emotional Distress

In order to adequately allege a cause of action for intentional infliction of emotional distress, Plaintiff must plead the following: (1) the defendant acted intentionally or recklessly; (2) its conduct was extreme and outrageous; (3) its actions caused the plaintiff emotional distress; and (4) the emotional distress was severe. *Hersh v. Tatum*, 526 S.W.3d 462, 468 (Tex. 2017). Because Plaintiff both alleges all required elements of this cause of action and also provides the factual basis for the allegations, Defendant's arguments fail.

### 1.      Plaintiff has alleged that Defendant acted intentionally.

Plaintiff alleges in his complaint that the Defendant acted intentionally when he engaged in his letter writing campaign and defamed Plaintiff in an effort to destroy Plaintiff's reputation in Texas. *See* Complaint, Dkt. No. 1 at ¶3, 12, 19, 40. As is clear under Texas law, intent may be inferred from the circumstances and the conduct of the actor, not just from the overt expressions of intent by the actor. *Toles v. Toles*, 45 S.W.3d 252, 260 (Tex. App.—Dallas  2001, pet. denied). Defendant JS's intent was clear: Defendant told several people that he intends to "ruin Plaintiff's life." *See* Complaint, Dkt. No. 1 at ¶12. Defendant makes no argument in his motion that Plaintiff has failed to adequately allege the first element of a cause of action for intentional infliction of emotional distress. Plaintiff has alleged the necessary state of mind to support this cause of action.

### 2.      Plaintiff has alleged that Defendant's conduct was extreme and outrageous.

Plaintiff alleges in his complaint that Defendant's conduct was extreme and outrageous. *See* Complaint, Dkt. No. 1 at ¶¶12, 16-17, 40. Plaintiff describes Defendants actions, as a man in his mid-50s, using the internet and social media to discover the names and addresses of sorority

girls that Plaintiff may know or may come in contact with, and sending them copies of an unverified complaint from a private case, without including any context or a return address in a targeted campaign to ruin the life of a college student. *See* Complaint, Dkt. No. 1 at ¶¶16, 12. In Texas, whether conduct is extreme and outrageous is a question of law. *Bradford v. Vento*, 48 S.W.3d 749, 758 (Tex. 2001). To be "extreme and outrageous," conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* If the Court determines that reasonable people could disagree as to whether the conduct is extreme and outrageous, the jury must decide the issue. *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 817 (Tex. 2005). Here, where a middle-aged man has engaged in an intentional campaign to ruin the life of his daughter's former boyfriend over an act that was not criminal, the Plaintiff has met his burden to plead that the conduct in question was extreme and outrageous.

Defendant argues that his campaign to ruin the life of Plaintiff is in fact an "act of warning a vulnerable person or group about conduct that could threaten them," in order to excuse his extreme actions. Defendant's Motion, Dkt. No. 14 at 13. Defendant ignores the fact that Plaintiff's actions were not criminal, and were never meant in any way to be malicious or to betray the trust of Defendant's daughter. Defendant's daughter had established that unprotected sex was an acceptable option, and initiated sexual intercourse on the night of the Christmas party. Defendant's efforts to paint Plaintiff as a rapist do not change the fact that Plaintiff is not a threat to women in any regard. Instead, Defendant would like to conflate a misunderstanding between a young and inexperienced couple as criminal actions in an attempt to excuse his bizarre, extreme and outrageous conduct.

With regard to Defendant's argument that Plaintiff's claim for intentional infliction of emotional distress is built on the same facts as the defamation and public disclosure causes of action, it is important to keep in mind that all Defendant's actions in the present case were part of a campaign to ruin Plaintiff's life. His object and goal was to cause Plaintiff severe emotional distress, in addition to ruining his reputation. And he chose to do so by engaging in a diverse means of character assassination that included online stalking and inappropriate mailing.[5] In determining whether conduct is extreme and outrageous, the court may consider a course of harassing conduct. *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 615 (Tex. 1999). Plaintiff became aware of a discreet subset of actions Defendant has undertaken in a campaign to ruin his life, and requires further discovery to fully reveal the extent of actions Defendant has engaged in as part of his campaign. Plaintiff asks that this Court not dismiss his cause of action for intentional infliction of emotional distress because Plaintiff believes that additional outrageous and extreme conduct from Defendant will come to light which will not fit neatly into the categories of defamation and public disclosure of private facts.

3.  <u>Plaintiff has alleged that Defendant's actions caused him severe emotional distress.</u>

Plaintiff alleges in his complaint that Defendant's conduct caused him severe emotional distress. *See* Complaint, Dkt. No. 1 at ¶40, 44. Defendant makes no argument in his motion that

---

[5]  Defendant cites an employment case, *Hoffman-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438 (Tex. 2004), to argue that an IIED claim is a gap-filler tort that can only be brought where no other claim can offer the same relief. *See* Defendant's Motion, Dkt. No. 14. In *Zeltwanger*, the plaintiff pled a cause of action based on ordinary employment and post-employment disputes like failure to prevent a few off-color jokes, and failure to report harassment concerns. *Hoffman-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 443-444 (Tex. 2004). The court found that such "ordinary" employment disputes could not be considered extreme and outrageous as a matter of law. *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 453 (Tex. 2004) (Justice O'Neill concurring). In this case, Defendant's conduct in stalking and smearing Plaintiff is much more outrageous than the "ordinary" conduct in the case cited by Defendant. That case involved an attempt by the plaintiff to tack on an IIED claim when the cases were not really about any intentional infliction of distress at all, whereas in this case, Defendant's conduct was intended to inflict distress and it just so happens that his conduct also happened to fulfil the elements of Defamation and PDPF. The gravamen of *Zeltwanger* was employment, and the gravamen of this case is IIED.

Plaintiff has failed to adequately allege that Defendant's actions caused him severe emotional distress. Any reasonable person would be severely distressed if a full-grown man determined to engage in a campaign of reputational destruction through false allegations of sexual assault in order to seem a hero to his heartbroken daughter.  Plaintiff has alleged the necessary facts to support this cause of action.

**D.      Defendant Has Presented Matters Outside the Pleadings**

Defendant attached to his Motion to Dismiss a copy of the Utah Complaint from the case he filed against Plaintiff and his family. Defendant's Motion, Dkt. No. 14 at 2. In so doing, Defendant has presented matters outside of the pleadings and as a result, his motion "must be treated as one for summary judgment under Rule 56" pursuant to Federal Rule of Civil Procedure 12(d). Fed. R. Civ. P. 12(d). This is fatal to Defendant's attempt to have this case dismissed at this stage, as it necessarily acknowledges that relevant facts exist outside the pleadings that may influence the Court.  Plaintiff respectfully requests the opportunity to conduct discovery and develop the facts fully for the Court's consideration.  Defendant's Motion to Dismiss should be denied.

## V.      CONCLUSION

In construing the facts in the light most favorable to Plaintiff and taking the allegations as true, the Court should deny Defendant JS's Motion to Dismiss. Plaintiff has adequately pled and supported all elements of his causes of action under Texas law and respectfully requests that the Court deny Defendant's Motion to Dismiss.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court deny Defendant JS's Motion to Dismiss. In the alternative, Plaintiff respectfully requests leave to amend the Complaint.

Respectfully submitted,

/s/ Derek Merman
Derek Merman *Pro Hac Vice*
Attorney in Charge
Texas Bar No. 24040110
Federal Bar No. 578113
**HEARD MERMAN LAW FIRM**
4900 Fournace Place, Suite 240
Bellaire, Texas 77401
713.665.1100 Voice
713.481.7082 Facsimile
HLFpi@HeardMerman.com

/s/ Dick DeGuerin
Dick DeGuerin
**DEGUERIN & DICKSON**
Texas Bar No. 05638000
Federal Bar No. 6204
1018 Preston, 7th Floor
Houston, Texas 77002
713.223.5959 Voice
713.223.9231 Facsimile
dick@deguerin.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2023, I served upon all counsel of record by fax, certified mail, return receipt requested, email, e-service, by messenger or electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to received services in this matter.

/s/ Derek Merman
Derek Merman