IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DAVID ROWAN LUKE § | | |
|    Plaintiff § | | |
| § | | |
| v. § | CIV. NO. 1:23-cv-1122-RP | |
| § | | |
| JEFFREY SCHWARTZ § | | |
|    Defendant § | | |

## DEFENDANT SCHWARTZ'S MOTION TO DISMISS

Defendant Jeffrey Schwartz files this Motion to Dismiss Plaintiff David Rowan Luke's First Amended Complaint ("Complaint") for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and would show the Court as follows:

## INTRODUCTION

Rowan Luke's Complaint amounts to a groundless, retaliatory lawsuit based on his own wrongful conduct. Taking the entire Complaint as true for purposes of this motion to dismiss, Luke has failed to plead any tort against Mr. Schwartz.

The defamation claim fails because the Complaint admits to the truth of the factual matter in Schwartz's alleged statement—that Luke unilaterally removed his condom during sexual intercourse with Schwartz's daughter, Emma. The only consent provided that evening was to engage in protected sex. Luke willfully ignored the scope of the consent given. The claim fails on multiple other fronts under longstanding Texas defamation doctrine—most critically, because the remaining statements Rowan Luke claims are "defamatory" are constitutionally protected, nonactionable opinion.

Luke also attempts to plead a claim for public disclosure of private facts, which would require proving the exact opposite of his defamation claim—publication of true, not

false, facts. But the pleading fails to identify any facts that were disseminated to the public at large, and it negates that the subject was private. In any event, communications regarding sexual assault have long been considered a matter of legitimate public interest, preventing a valid public-disclosure claim.

Rowan Luke's claim for intentional infliction of emotional distress is likewise irreparably flawed. That tort can serve only as a "gap filler," making it unavailable here because the claim relies on the exact same facts as the other two recognized tort claims. Despite responding to Schwartz's first motion to dismiss that identified these weaknesses, Luke's amended complaint leaves the claim in its threadbare state. The cause of action contains no facts whatsoever—much less the outrageous conduct required for this exceptional claim.

## FACTUAL BACKGROUND

This suit, and the underlying Utah suit, both arise from the same core event: Rowan Luke unilaterally removed his condom during sex with then-minor Emma Schwartz without her knowledge. Dkt. # 27 at ¶ 7–8; *see* Dkt. # 21, *Order* at 1 ("On December 18, 2021, Plaintiff and ES were having intercourse when Plaintiff removed his condom without ES's knowledge.")

Luke's new federal suit accuses Emma's father of three torts, all based on the following alleged statements:[1]

(1) Schwartz's email advising affiliates of a University of Texas fraternity that he and his family were working "to strengthen the laws and verbiage around the

---

[1] The parties' settlement agreement contained no nondisclosure agreement, so Plaintiff does not, and cannot, bring a contract claim against Schwartz.

definition of sexual assault" and advising that Luke had sexually assaulted his daughter in high school, sent "in hopes that it will not happen to another woman in the future, as well as educating young men about sexual assault." Dkt. # 27-1.

(2) Schwartz's alleged mailing of other unidentified "similar" statements, including the Utah complaint itself, to unidentified "sorority girls" and other "recipients" in Texas. Dkt. #1 at ¶ 15–17. That Utah complaint was publicly filed in May 2022 and contained Luke's full legal name. Dkt. # 17-5 at 1. It remained public for over a year, until August 2023 when he requested it be ordered private as part of a non-confidential settlement of the Utah suit. Dkt. # 27-2.

## MOTION STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

A court ruling on a Rule 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted).

## ARGUMENT AND AUTHORITIES

### A.   Luke fails to state a claim for libel.

Rowan Luke's libel pleading does not state a claim. The complaint fails as to multiple elements of libel, a cause of action that would require showing: (1) the defendant published a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) made with the requisite degree of fault, and (4) which caused damages, unless the statements were defamatory per se. *Dall. Morning News, Inc. v. Tatum*, 554 S.W. 3d 614, 623 (Tex. 2018).

#### 1.   Luke pleads no defamatory statement.

##### a.   Luke identifies no false fact published.

A valid libel claim would require publication of a false statement of fact to a third party. *Id*. Luke's Complaint pleads no such statement.

###### i.   The single statement that Luke pleads is "defamatory" contained no false fact.

Within his libel cause of action, Luke claims there was one solitary, ***unnamed*** "defamatory statement," with no facts in support. Dkt. #27 at ¶¶ 23–27. And a thorough review of the Complaint, including the entire "Facts" section, fails to reveal a single fact allegedly published by Schwartz that is even arguably false. Dkt. #27 at ¶¶ 6–19. Instead, Luke admits the facts are true—he decided to, and did, remove his condom during sex with Emma without her knowledge. Dkt. #27 at ¶¶ 7–8. The remaining allegations are too vague

to support a claim, such as the unspecified "similarly defamatory statements" to unnamed "members of sororities across Texas." Dkt. # 27 at ¶ 15. Those generalized accusations cannot survive dismissal. *Mandawala v. Ne. Baptist Hosp.*, 16 F.4th 1144, 1153 (5th Cir. 2021) ("To plead defamation in federal court, a plaintiff generally must specify when and where the statement was published.").

There is no false factual statement identified in the entirety of the federal pleading.

### ii. Characterization of conduct as "sexual assault" is nonactionable opinion.

Luke's defamation claim seems to hinge on the email he attaches to his Complaint, and his disagreement with Schwartz's characterization of his acts as a "sexual assault." Dkt. # 27–1.[2] But whether Luke's unilateral removal of his condom qualified as "sexual assault" is a matter of legal opinion, not fact.

The Texas Supreme Court cautions: An opinion—even a "pernicious," "insulting," or "reprehensible" one—cannot be defamation. *Lilith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355, 362 (Tex. 2023); *see Dall. Morning News*, 554 S.W.3d at 638. "Statements that cannot be verified, as well as statements that cannot be understood to convey a verifiable fact, are opinions" and "cannot form the basis of a defamation claim." *Dall. Morning News*, 554 S.W.3d at 639. Specifically, defamation doctrine "may not muzzle a speaker from asserting an opinion in an ongoing debate about the law." *Lilith Fund for Reprod. Equity*, 662 S.W.3d at 362.

---

[2] Luke apparently realizes he cannot bring a claim for defamation based on the statements made in the Utah complaint itself. That complaint is protected by the judicial-proceedings privilege, which prevents any tort claim based on statements made in any "pleadings or other papers" in litigation. *Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 46 (Tex. 2021).

The line between legal opinion and fact is impenetrable because of its constitutional implications. *See Lilith Fund for Reprod. Equity*, 662 S.W.3d at 362. The Texas Supreme Court has recently reinforced this distinction, holding that a defendant's statement describing abortion as "murder" and of nonprofits as "criminal organizations" was protected, nonactionable opinion. *Id.* at 359 (reversing appellate decision and remanding for dismissal of defamation claim). The Court rejected the lower court's approach—which was to analyze the conduct under the Texas Penal Code to decide whether the statements were false. *Id.* at 357, 360.

The Complaint describes Schwartz, a Utah resident, sending an email referencing "sexual assault" to recipients in Texas. Dkt. # 27 at ¶¶ 2, 14, 15. Even after amending his complaint, Luke fails to explain whether he believes Schwartz was referring to Texas law or Utah law when characterizing the conduct as "sexual assault." But under either Utah or Texas law, "sexual assault" is actionable as a civil tort, so whether any particular conduct qualifies is a textbook example of legal opinion. "Texas law recognizes the personal injury tort of sexual assault." *Shepard v. Longhorn Pipeline Partners, L.P.*, No. EP-07-CV-00307-KC, 2008 WL 11417015, at *2 (W.D. Tex. Mar. 19, 2008). The two essential elements to a civil sexual assault based on unwanted contact with an adult are: "(1) the defendant intentionally or knowingly caused physical contact with the plaintiff, and (2) the defendant knew or reasonably should have believed that the plaintiff would regard that contact as offensive or provocative." *Solis v. S.V.Z.*, 566 S.W.3d 82, 91 (Tex. App.—Houston [14th Dist.] 2018, pet. denied); *see Caver v. Clayton*, 618 S.W.3d 895, 902–03 (Tex. App.—Houston [14th Dist.] 2021, no pet.). Under Utah law, similarly, a tortious "sexual assault" occurs when the defendant "(a) acts intending to cause a harmful or offensive contact with

the person of the other or a third person, or an imminent apprehension of such contact, and (b) a harmful contact with the person of the other directly or indirectly results." *Campbell v. Whitear*, 2:21-CV-421, 2023 WL 6283370, at *6 (D. Utah July 21, 2023), *adopted* at 2023 WL 6276596. Such contact is "harmful or offensive" if "the recipient of the contact has not consented either directly or by implication," or if "no reasonable person would consent." *Larsen v. Davis Cnty. Sch. Dist.*, 409 P.3d 114, 123 (Utah App. 2017).

Regardless of whether Schwartz was allegedly describing sexual assault under Texas or Utah law, the description is a legal opinion—not verifiable fact. For example, both states' standards include a reasonable-person test—which is plainly not a "fact" that can form the basis for a defamation claim. *See Solis*, 566 S.W.3d at 91; *Larsen*, 409 P.3d at 123. And in context, in the single email cited, Schwartz overtly couched his description of the conduct as opinion, explaining that he and his daughter were working with the Utah legislature and their federal congressional representative "to strengthen the laws and verbiage around the definition of sexual assault." Dkt. # 27-1.

Any attempt to prove the falsity of the "sexual assault" characterization would require conducting the very analysis the Texas Supreme Court rejected in *Lilith Fund*, by applying the facts to the law to determine the statement's "truth." *See* 662 S.W.3d at 357, 360. These and similar opinion-based defamation claims have been consistently rejected in Texas. For example, stating that a plaintiff's conduct "constitutes a grave breach of legal ethics" is not defamatory material. *See Paulsen v. Yarrell*, 537 S.W.3d 224, 235 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) ("Nothing in this statement is objectively verifiable. Therefore, these are purely subjective assertions of opinion."). The statement that a plaintiff "had lied and 'committed perjury'" is nonactionable for the same reason.

*See Johnson*, 526 S.W.3d at 537, 541–42 (citing *Riley v. Harr*, 292 F.3d 282 (1st Cir. 2002)). And recently, the Austin Court of Appeals applied *Lilith Fund* to dismiss a defamation claim in which the speaker described a plaintiff's receipt of funds as "illegal profits." *O'Rourke v. Warren*, 673 S.W.3d 671, 678 (Tex. App.—Austin 2023, pet. filed).

"Whether a statement is an opinion is a question of law." *Dall. Morning News*, 554 S.W.3d at 639. A speaker's characterization of conduct as "murder," "breach of legal ethics," "illegal," "perjury," or "sexual assault" are all opinions that are equally incapable of defamatory meaning. The claim should be dismissed for this key, threshold reason.

        **a.**      **Regardless, the alleged statement was true.**

Viewing the amended pleading in Luke's favor, none of the factual matter in Schwartz's alleged statement is false. As for the facts: Luke admits he unilaterally, and without Emma's knowledge, removed his condom. Dkt. #27 at ¶¶ 7–8; Dkt. # 21, *Order* at 1.[3] As for the opinion: Schwartz's characterization of that conduct as "sexual assault" is accurate under civil tort law. Rowan Luke forced Emma into unprotected sex when she did not know or consent to it, "knowingly caused physical contact with" her when he "reasonably should have believed that [she] would regard that contact as offensive or provocative." *Solis*, 566 S.W.3d at 91. A sexual-assault defendant is liable "for contacts that are offensive and provocative regardless of whether they cause physical harm." *Caver*, 618 S.W.3d at 902. And Luke's Complaint claims only that Emma had consented to unprotected sex in the past; he does not claim she consented on the evening in question. *See*

---

[3] Plaintiff's invasion-of-privacy claim apparently concedes the truth of the Utah Complaint, given that a successful claim requires that "what is publicized must be facts, not falsities." *Roe v. Patterson*, No. 4:19-CV-179, 2022 WL 672692, at *11 (E.D. Tex. Mar. 7, 2022); *see Provencio v. Paradigm Media, Inc.*, 44 S.W.3d 677, 683 n.23 (Tex. App.—El Paso 2001, no pet.)

*Larsen*, 409 P.3d at 123 (requiring direct or implied consent). Rowan Luke's unilateral removal of his condom without Emma's knowledge was both harmful and offensive because of this lack of consent. *See Campbell*, 2023 WL 6283370, at *6. Though these constitute nonactionable legal opinions rather than facts, they are nonetheless accurate.

Because the Complaint on its face reveals the truth of Schwartz's alleged statement, the defamation claim is not actionable.

### b.  Plaintiff pleads no defamatory statements.

Plaintiff fails to identify any false fact stated by Defendant that contains defamatory material. "Whether a statement is reasonably capable of defamatory meaning is a question of law for the court." *Johnson v. Phillips*, 526 S.W.3d 529, 534 (Tex. App.—Houston [1st Dist.] 2017, pet. denied); *see Dall. Morning News*, 554 S.W.3d at 632.

A statement "may even be false, abusive, unpleasant, or objectionable to the plaintiff without being defamatory." *San Antonio Express News v. Dracos*, 922 S.W.2d 242, 248 (Tex. App.—San Antonio 1996, no writ). "To qualify as defamatory, a statement should be derogatory, degrading, somewhat shocking, and contain elements of disgrace." *Farias v. Garza*, 426 S.W.3d 808, 816 (Tex. App.—San Antonio 2014, pet. denied). As a matter of law, no factual statement Plaintiff alleges Defendant made rises to this level, much less to the level of defamation *per se*, so the claim should be dismissed for this reason as well.

### B.  Luke's invasion-of-privacy claim should be dismissed.

Rowan Luke's invasion-of-privacy pleading is equally flawed. Invasion of privacy based on public disclosure of private facts requires a plaintiff to prove that "(1) publicity was given to matters concerning one's personal life, (2) publication would be highly offensive to a reasonable person of ordinary sensibilities, and (3) the matter publicized is

not of legitimate public concern." *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 474 (Tex. 1995); *see Lowe v. Hearst Commc'ns, Inc.*, 187 F.3d 246 (5th Cir. 2007) (citing Texas law). The information that was publicized must be "highly intimate or embarrassing facts about a person's private affairs." *Johnson v. Sawyer*, 47 F.3d 716, 731 (5th Cir. 1995) (quoting *Indus. Found. of the S. v. Tex. Indus. Acc. Bd.*, 540 S.W.2d 668, 683 (Tex. 1976)). When analyzing an invasion-of-privacy claim, "whether something is "highly offensive" is first a matter of law; a certain threshold of offensiveness is required." *Polansky v. Sw. Airlines Co.*, 75 S.W.3d 99, 105 (Tex. App.—San Antonio 2002, no pet.). Luke's claim fails for three independent reasons.

### 1.    Luke does not plead publicity to the public at large.

Luke's public-disclosure claim is based on his allegations that Schwartz mailed the underlying Utah complaint to "sorority girls." Dkt. 27 at ¶¶ 16, 34–38.

The Utah complaint itself cannot be the basis of any claim. All statements made in litigation are protected by the judicial-proceedings privilege, which prevents "any tort litigation based on the content of the communication" in a lawsuit, including all "pleadings or other papers in the case[.]" *Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 46 (Tex. 2021).

And Luke pleads no facts showing Schwartz disseminated the Utah complaint to a sufficient number of recipients to amount to "publicity." *See Indus. Found. of the S. v. Texas Indus. Acc. Bd.*, 540 S.W.2d 668, 683–84 (Tex. 1976) ("'Publicity' requires communication to more than a small group of persons; the matter must be communicated to the public at large, such that the matter becomes one of public knowledge."). Luke's amended pleading adds a line claiming that the Utah complaint reached "the public at

large," but this conclusory statement cannot salvage the claim. His only factual pleading states that the complaint went to a single, specific group: "a broad class of sorority girls." *See* Dkt. 27 at ¶¶ 16. For this reason alone, the claim fails.

### 2. Luke's Complaint negates that the matter was private.

Second, as a matter of law, the Utah complaint cannot be deemed private, intimate, or offensive—given that that the complaint was in the public record for at least 15 months before being deemed "private" by the Utah court. *Utah Complaint;*[4] *see* Dkt. # 27-2; *see* Dkt. # 21, *Order* ("the Utah civil suit, which named Plaintiff and ES in full, proceeded publicly for over a year."). The Fifth Circuit has emphasized that it is "obvious" that the tort "applies only to *private* facts," not to facts that were already public. *Faloona by Fredrickson v. Hustler Magazine, Inc.*, 799 F.2d 1000, 1006 (5th Cir. 1986) (emphasis in original).

Notably, the Utah court specifically declined to order the state complaint private under the provision allowing for classifying records "containing information the disclosure of which constitutes an unwarranted invasion of personal privacy." UT R. J. ADMIN. 4-202.04(5)(D); *see* Dkt. # 27-2 at 2 (citing *id.* § 4-202.04(5)(A)). Instead, the court simply ordered the case classified as "private . . . so that the public may not have access to the pleadings or filings filed herein" in response to an unopposed motion. Dkt. #27-2. For over a year, Luke and his family actively participated in the Utah case in the open, public record—including filing under their legal names until settlement—which precludes any claim now that the complaint could remain as an "intimate" and private fact.

---

[4] The Utah complaint is incorporated by repeated reference within Plaintiff's federal Amended Complaint. Dkt. # 27; *see Dorsey,* 540 F.3d at 338. The Court may also take judicial notice of the fact that these pleadings were filed. *Walker v. Beaumont ISD*, 938 F.3d 724, 735 (5th Cir. 2019).

### 3. The alleged disclosure was of a matter of public concern.

Finally, the public-disclosure pleading fails on its face because the threat of sexual assault has long been deemed a matter of public concern by the Texas Supreme Court and the Fifth Circuit Court of Appeals. *Star-Telegram, Inc.*, 915 S.W.2d at 474; *Ross v. Midwest Comm'n, Inc.*, 870 F.2d 271, 273 (5th Cir. 1989). In *Star-Telegram*, the Court weighed whether the "embarrassment of innocent individuals" victimized by sexual assault[5] would justify allowing them to bring an invasion-of-privacy tort claim against defendants publicizing that information. *Id*. The Court concluded it would not. *Id*. Individuals cannot avoid disclosure of such conduct, which is "critical information of legitimate public interest," simply because of "the stress of some unpleasant or undesired notoriety" that may come from that publicity. *Id*. at 475. And the Fifth Circuit has cautioned that a legitimate public concern overrides any potential tort liability. *See Lowe v. Hearst Commc'ns, Inc.*, 487 F.3d 246, 251 (5th Cir. 2007). Even where a defendant allegedly violated a protective order by disseminating information from court-protected confidential documents, those claims were properly dismissed. *Id*. The Fifth Circuit has also rejected the argument that "details of [a] rape" were private for purposes of an invasion-of-privacy claim, reasoning that the "facts were clearly of 'legitimate public concern.'" *Ross*, 870 F.2d at 273.

Here, too, Luke's conduct is of legitimate public concern, making his claim groundless.

---

[5] The Plaintiffs in *Star-Telegram* could not make out an invasion of privacy claim, and they were the ***victims*** of sexual assault. Certainly Rowan Luke's pleading cannot survive.

### C. Luke's IIED claim should be dismissed.

Luke's claim for intentional infliction is the very definition of "threadbare." He lists the claim's elements in a single paragraph with no factual material at all. Dkt. # 27 ¶ 40. "Threadbare recitals of the elements of a cause of action" cannot survive Rule 12(b)(6) dismissal. *Shaw v. Villanueva*, 918 F.3d 414, 415 (5th Cir. 2019). For this reason alone, it must be dismissed.

Luke's Complaint negates the existence of a valid IIED claim. By Texas law, the elements of an IIED are: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the plaintiff's emotional distress was severe.

"The mere fact that a defendant's conduct is tortious or otherwise wrongful does not, standing alone, necessarily render it 'extreme and outrageous.'" *Bradford v. Vento,* 48 S.W.3d 749, 758 (Tex. 2001). The "plaintiff must establish defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Morgan v. Anthony*, 27 S.W.3d 928, 929 (Tex. 2000). Dismissing a claim for mere words spoken about the plaintiff is appropriate where the conduct is not outrageous because "[l]iability does not extend to mere insults, indignities, [or] threats." *Patton v. United Parcel Serv., Inc.*, 910 F. Supp. 1250, 1270 (S.D. Tex. 1995) (citing *Ugalde v. W.A. McKenzie Asphalt Co.*, 990 F.2d 239, 242 (5th Cir. 1993).)

"Whether a defendant's conduct is 'extreme and outrageous' is a question of law." *Bradford v. Vento*, 48 S.W.3d 749, 758 (Tex. 2001); *Atkinson v. Denton Pub'g Co.*, 84 F. 3d 144, 151 (5th Cir. 1996) ("it is the province of the court to determine whether a

defendant's conduct may reasonably be regarded as extreme and outrageous enough to permit recovery.").

The act of warning a vulnerable group about conduct that could threaten them is not and cannot be "extreme or outrageous" conduct. *See Bradford*, 48 S.W.3d at 758. Instead of going "beyond all possible bounds of decency . . . in a civilized society," the warning constitutes quite the opposite. Society's approach to sexual assault and education about it has evolved—and society values the act of speaking out, warning the vulnerable, and raising awareness. Luke's IIED theory highlights his attitude about his own conduct. He views himself as the victim here. That thinking is blind to reality and the progress made in support of a woman's right to determine the degree of consent she provides.

Finally, and critically, "an IIED claim is considered a "gap-filler" tort[;] in order to make a claim for it, there must be no other possible relief." *Hoffman-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 441 (Tex. 2004). Where the gravamen of the complaint is defamation and the "IIED claim rests upon the same underlying facts as [plaintiff's] claim for defamation," the IIED claim must be dismissed, regardless of the viability of the defamation claim. *Tubbs v. Nicol*, 675 Fed. App'x 437, 440 (5th Cir. 2017); *see also Hoffman-La Roche Inc.*, 144 S.W.3d at 447 ("Where the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available.").

Even viewing Luke's allegations in his favor, none of Schwartz's pleaded conduct is outrageous in character. Regardless, even the amended IIED claim pleads *no facts at all—* it rests entirely on the underlying facts for defamation or public disclosure. His IIED claim is merely duplicative of the others. *Mandawala*, 16 F.4th at 1154 (affirming dismissal where

"IIED claim duplicates his others"). This gap-filler tort cannot apply in this suit and should be dismissed.

## CONCLUSION AND PRAYER

For all these reasons, Defendant Jeffrey Schwartz respectfully requests that the Court grant its motion and dismiss Rowan Luke's claims with prejudice, and for all other relief in law and equity to which he may be justly entitled.

|  |  |
|---|---|
|  | Respectfully submitted,<br><br>**BURGESS LAW PC**<br>Karen C. Burgess<br>State Bar No. 00796276<br>kburgess@burgesslawpc.com<br>Stacy Rogers Sharp<br>State Bar. No. 24052109<br>ssharp@burgesslawpc.com<br>Katie Dolan-Galaviz<br>State Bar No. 24069620<br>kgalaviz@burgesslawpc.com<br>404 West 13th Street<br>Austin, Texas 78701-1825<br>Telephone: (512) 482-8808<br>Facsimile: (512) 900-6325 |
| Dated: December 22, 2023 | By: */s/ Karen C. Burgess*<br>      Karen C. Burgess<br><br>Sherrard (Butch) Hayes<br>State Bar No. 00784232<br>Email: shayes@wshllp.com<br>**WEISBART SPRINGER HAYES LLP**<br>212 Lavaca Street, Suite 200<br>Austin, Texas 78701-3955<br>Telephone: (512) 652-5780<br>Facsimile: (512) 682-2074<br><br>**ATTORNEYS FOR DEFENDANT JEFFREY SCHWARTZ** |

## CERTIFICATE OF SERVICE

I hereby certify that, on December 22, 2023, the foregoing was electronically filed with the Court by using the Western District of Texas' CM/ECF filing system, which provided notice of the filing to all CM/ECF participants.

*/s/ Karen C. Burgess*
Karen C. Burgess